CHARLES CROOKER, in equity. *vs.* LEVI W. HOUGHTON and another, administrators.

*Review in equity—grounds for.*

Review in equity will be granted only on the ground of newly discovered matter, or for error apparent upon the face of the record.

A bill in equity was brought by the complainant for the purpose of obtaining a settlement of the affairs of the partnership of which he was a member. In 1861 a receiver was appointed, and the firm affairs in 1864 referred to a master for adjustment. In 1872 the master made his report which, among other things, found "that a portion of the moneys or securities in the hands of the receiver was and still is the individual property" of the complainant, and should be deducted before the distribution was made of the partnership assets, and stated that an interest account was uncalled for and such an account was not stated. The report found that the complainant was entitled to $17,808.63, and this bill was brought praying for a review on the ground that interest should have been allowed on the amount so found. *Held*, that, as it did not appear that the amount awarded the complainant did not include interest, and as the report did not show how it came into the receiver's hands, there was no such error apparent upon the face of the record as would entitle the complainant to a review.

BILL IN REVIEW IN EQUITY.

At the December term of court in this county, in 1857, this complainant commenced proceedings by bill in equity against William D. Crooker and others, alleging in the bill that in the

year 1826 he formed an equal partnership with William D. Crooker, under the name and style of C. & W. D. Crooker; that until the dissolution of this partnership on the 19th day of June, 1854, they were from time to time engaged in the buying and selling of merchandise, the building and sailing of ships, the cutting and marketing of lumber, and other business; that on said 19th day of June the copartnership was largely indebted, and that their assets consisted mainly of parts of certain ships and parcels of land; that these parcels of land were all purchased on the credit and with the money of the firm, and were holden by the complainant and William D. Crooker as tenants in common; that during the three and four years succeeding the dissolution of the copartnership numerous suits, the plaintiffs in which were joined with William D. Crooker as defendants in the bill, were instituted against said William D. for the recovery of debts contracted by him on his own separate and individual account and credit, and in the prosecution of business in which the complainant had no concern or interest; that the amount of these debts the complainant was unable to state, but believed them to be between twenty-five and forty thousand dollars; that he believed the other defendants intended to obtain satisfaction of the judgments which they might recover by levying upon the legal estate of William D. Crooker in the parcels of land mentioned above; that thereby one-half of the assets of the copartnership would be absorbed by the payment of the individual debts of William D.; and the remainder would be utterly insufficient to discharge the firm liabilities; that the complainant had already been obliged to pay partnership debts to a large amount out of his own property, and that William D. Crooker had neglected and refused to come to a settlement of the partnership accounts and dealings and to join with the complainant in selling the partnership property and paying its debts. The complainant therefore prayed for the dissolution of the attachments against the estate of William D. Crooker in the before-named parcels of land; that the other defendants might be restrained from satisfying their judgments thereon; that a receiver might be

appointed, and William D. Crooker be compelled to join with the complainant in conveying to the receiver all the lands mentioned above and all other property of the copartnership, and that the receiver might be ordered to sell and dispose of the same, pay the firm debts, and dispose of the balance as the court should direct.

At the August term, 1861, a receiver was appointed.

At the April term, 1864, the injunction was granted, as prayed for, restraining the other defendants from further proceedings against William D. Crooker in their several suits, and decreeing a dissolution of their attachments; the matters of the firm were referred to C. W. Larrabee, master in chancery; the receiver, previously appointed, was confirmed, and Charles and William D. Crooker were required to convey to him all the real estate mentioned in the bill and all other property belonging to the firm.

The receiver was required, among his other duties, to account for, semi-annually, and pay what he should receive as below stated, unless otherwise ordered by the court; to sell and dispose of the lands and other property, and out of the proceeds thereof to pay the company debts as ascertained by the master, or so much thereof as the proceeds of the property and the partnership funds in his hands would pay *pro rata*, and if any balance remained after the payment of firm debts and the proper charges of the receiver and master, to pay such balance *pro rata* in adjustment of the private claims of each partner for services and advancements made by them severally for the benefit of the firm and in the settlement of its affairs. The remainder, if any, was to be divided equally between the partners.

At the August term, 1872, the master made his report, which was accepted and which, without the merely formal portions, was as follows:

" That from the condition of the accounts of the said firm of C. & W. D. Crooker, I find it impracticable to state an annual account from the beginning of the copartnership to the date of dissolution, covering a period of twenty-nine years, from the fact that an important portion of the accounts during said period do not

bear evidence of being original entries, and are constituted of vouchers whose history is not clear, and this difficulty is experienced to a great degree in all those partnership transactions, to a degree that makes an interest account, in my judgment, uncalled for, therefore I have not stated an interest account.

Since the date of dissolution in June, 1857, all the outstanding copartnership liabilities have been settled, not by the receiver, but by the individual members of the late firm out of their individual property.

The receiver has not paid out the moneys in his hands in liquidation of the copartnership liabilities, so that the money now in the hands of the receiver belongs to the members of the firm, that is to Mr. Charles Crooker, and the legal representatives of the late William D. Crooker, who in his lifetime with Charles Crooker composed said firm.

I find that a portion of the money or securities now in the hands of the receiver was and still is the individual property of the senior member, Charles Crooker, and that this shall first be deducted before the distribution be made of partnership assets, thus, viz. :

Total amount in hands of Wm. B. Taylor, receiver,    $36,460.00
Receipts of parties as per schedule,    2,058.21

   $38,518.21

Less bill of Wm. B. Taylor,    $100.00
Less bill of master,    800.00
Suit in favor of C. S. Jenks *vs.* J. A. Crooker for Duncan house,    173.73

   1,073.73

Balance,    $37,444.48

Out of this sum I find that Charles Crooker, surviving partner, is entitled to be paid first the sum of          $17,808.63

and that the balance of                                                 $19,635.85
is to be equally divided between the said surviving
partner and the legal representatives of the deceased partner, that is—
Charles Crooker shares one-half of $19,635.85
which is                                                                     9,817.92½
Est. of Wm. D. Crooker shares one-half which is            9,817.92½

$19,635.85

I further report that said sum of $17,808.63 is owing to said Charles from the assets in the hands of the receiver, and is to be first paid to him therefrom, and that whatever the balance shall be at date of decree of distribution shall be divided equally as aforesaid, and that in making the division of said balance all receipts held by the receiver against the said parties shall be taken at their face without interest."

At the December term, 1872, Charles Crooker brought this bill in review against the respondents, who are administrators of the estate of William D. Crooker. This bill, after alleging substantially the same facts that have been set forth above and stating that the complainant in 1861 gave his deposition to be used in the original bill, in which he testified that the balance due him from the firm was $21,040.37, further alleges "That said master finds and reports that the whole net amount of assets in the hands of the receiver is $37,444.00, and that a balance is due to your orator from said firm, for advancements from his individual property to pay the debts of said firm, amounting to $17,808.63, and your orator alleges that the last item in said balance was the sum of $7,000.00, paid out of his private property on the 16th day of October, 1863, to discharge an outstanding execution against said firm, and that the balance of said sum had been paid out many years prior to 1863, and a large part was actually due to him at

the dissolution of the partnership in 1854, still said master did not allow him any interest on these sums. . . . Your orator further represents that at the time said report was made to the court and said final decree entered he had no counsel to advise him of his rights, and he did not fully understand that no interest had been allowed him till the decree was entered of record, and then, before the final adjournment of the court, he went to the court house to object and was informed it was too late.

Now, your orator charges that there is manifest error, appearing on the face of the record, in said report and the final decree of the court founded thereon and made in accordance therewith, inasmuch as by law and the rules of equity, and in justice and good conscience, your orator was entitled to interest on the balance, which was found due him for money advanced from his individual property, many years before, to pay the debts of the firm; but said master disregarded the law and the rules of equity in this respect, and did not allow him any interest; and therefore he brings this bill in review, and humbly prays that your honors will so far, at least, review the proceedings and record in this case as to rectify the error aforesaid, and allow him interest, at least, from the time of the last payment of $7,000 in October, 1863, and for such other relief in the premises as justice and equity may require."

The respondents demurred to all of the bill "except so much as alleges that the master in chancery finds and reports that a balance is due to said Crooker, from the firm of C. & W. D. Crooker, for advancements from his individual property to pay the ·debts of said firm, amounting to $17,808.63, and that said master did not allow him any interest on these sums;" and to this portion of the bill the respondents answer, denying that "said sum or any other sum was allowed by said master to said Charles, for advancements from his individual property to pay the debts of said firm," and alleging that the sum of $17,808.63 was the amount of the individual property of the complainant in the hands of the receiver, including interest at the time the report was made.

The complainant joined the demurrer, but made no replication to the answer.

*Baker* and *Baker*, for the complainant.

I. The first question to be considered is, was there a balance due the plaintiff from the firm or from the funds in receiver's hands?

1. The original bill so alleges under oath.

2. The plaintiff's deposition in that bill so states.

3. The master's report finds a balance of $17,808.63 due plaintiff in 1862 from the funds in the receiver's hands.

It is said that this sum was not for advances from the individual property of the plaintiff to pay firm debts, but which came in some other way into the receiver's hands.

In any event it was the plaintiff's money in the hands of the receiver and withheld by him from the plaintiff.

II. When was it so received by the receiver?

1. The receiver was appointed August term, 1861.

2. He was confirmed at the April term, 1864, and ordered to give security "duly and semi-annually to account for and pay what he shall so receive," to receive and collect the debts due the firm, to dispose of the lands and other property, and the balance which remained after the payment of firm debts was to be paid *pro rata* in adjustment of each partner's private claims for services and advancements for the benefit of the firm.

All the property, except certain real estate in Bath, was converted into money, when it does not appear, but we are to presume that the officer of the court complied with the terms of his bond and converted the property immediately or within a reasonable time.

III. 1. It is the duty of trustees to invest trust funds so as to earn interest. Adams Eq., 56 and note; 2 Story's Eq., §§ 127, 129; *Lowell* v. *Minot*, 20 Pick. 119; *Clark* v. *Garfield*, 8 Allen, 427.

2. He is liable for interest in this case, whether the funds earned it or not, since he disobeyed the orders of court and the terms of his trust.

3. But he did invest the funds, and it is to be presumed in government bonds, like the English "consols," according to the chancery rule. See the master's report. It is not to be presumed that for five to eight years any reasonable man would allow $38,000 to be locked up without interest.

IV. Did the master allow plaintiff any interest?

1. He does not intimate that he did.

2. He declares that he did not state "an interest account."

3. He also states that the receipts held by the receiver "shall be taken at their face without interest."

4. He does not find it impracticable to reckon interest or make an interest account, but simply that it was "uncalled for." All the elements necessary to reckon interest exactly were at hand. That he did not allow interest on the $17,808.63 of plaintiff's individual money is the gravamen of this bill of review.

5. We do not expect this court to ascertain the amount unjustly withheld from plaintiff, but that the case may be committed to another master.

V. Plaintiff had no counsel when the report and decree were made, and from age, the long vexation of this fifteen years' litigation, and the slow movement of his perceptive faculties, he did not perceive the defect in the report and decree till they were accepted and confirmed and court had adjourned.

*Francis Adams*, for the respondents.

This being a bill of review in equity, it can be sustained only upon one of two grounds, either for the discovery of new matter, or for error apparent upon the face of the record. *Robinson* v. *Sampson*, 26 Maine, 11, and authorities cited.

This bill contains no allegation of newly-discovered matter, and the review is asked on the ground that there is manifest error apparent on the face of the record. An examination of the case will show that the error is in the plaintiff's statement rather than in the report. The master's statements in the report relative to not stating an interest account had reference to the time during which the partnership existed, and had nothing to do with its ac-

counts after its dissolution. There was nothing in the master's report to show that the $17,808.63 did not include all that had been earned on the property in the hands of the receiver.

DICKERSON, J. This is a bill of review in equity, founded upon alleged errors on the face of the record of the case of *Charles Crooker, in equity,* v. *William D. Crooker,* commenced at the December term of the court, in the county of Sagadahoc, A. D. 1857, and disposed of at the August term, 1872.

The plaintiff and defendant in the original bill were copartners for twenty-nine years next preceding June 19, 1857, when the copartnership was dissolved ; that bill was brought to enforce a settlement of the partnership affairs.

The error is alleged to consist in the omission of the master in the original suit to allow the plaintiff "interest on the balance of $17,808.63, which was found due him for money advanced from his individual property, many years before, to pay the debts of the firm," to which the plaintiff alleges he is entitled.

There being no allegation of the discovery of new matter, the bill can only be sustained upon showing that the errors alleged are apparent upon the face of the record in the report and decretal order of the court founded thereon. *Robinson* v. *Sampson,* 26 Maine, 11.

The report of the master shows that he found a portion of the money or securities in the hands of the receiver to be the individual property of the plaintiff, amounting to $17,808.63, and that the accounts of the firm, extending over a period of twenty-nine years, were in such a condition as to render it impracticable to state an interest account, and that, therefore, he did not do so. It will be seen that the report of the master does not state that he did not allow interest on any of the items going to make up the said sum of $17,808.63, but that "he did not state an interest account."

Whether the money or securities, found by the master to be the individual property of the plaintiff, were the excess of the

Crooker *v.* Houghton.

plaintiff's interest in the capital stock of the firm, or were due him for advances to pay the partnership debts, or were casually in possession of the partners when the partnership was dissolved, or whether they were received by the receiver in specie, or were the avails of other property disposed of by him, or came into his hands inadvertently by virtue of his office as receiver, does not appear from the report. Nor, as we have seen, does it appear that interest was not allowed upon any or all the items composing that amount. The phraseology of the report, that "the money or securities was and still is the individual property of Charles Crooker," would seem to indicate that "the money or securities" was received and had been kept by the receiver in specie.

If we pass from the report to the defendants' answer we there have a denial that the sum of $17,808.63 or any other sum was found due by the master to the plaintiff for advancements from his individual property to pay the debts of the firm, as alleged in the bill, and a distinct assertion that the said sum of $17,808.63, found due the plaintiff, included the interest at the time the report was made.

The allegations in the bill are not sustained by the evidence, nor is there sufficient matter alleged in the parts of the bill demurred to to entitle the plaintiff to review the record and proceedings in the former bill.

> *Demurrer sustained.    Bill dismissed*
> *with costs for the defendants.*

APPLETON, C. J.; CUTTING, DANFORTH, VIRGIN, and PETERS, JJ., concurred.

. The following note was added by

APPLETON, C. J.    I entirely concur in the above, but I wish to add that, in my judgment, the plaintiff is barred by his own negligence. The grounds of a review must be such as the party by reasonable diligence could not have known; if there was laches or negligence, that destroys the title to relief.    The master's report

was filed on the second day of the April term, 1872. It was known to the plaintiff. He had ample opportunity to examine it. He asked for no delay. He made no objections to the report. He employed no counsel. He relied on his own judgment, and with full knowledge of the report and of its terms and conditions, or with ample opportunity for such knowledge, he stood by and permitted its acceptance without objection.